UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

_In re:_

**Frank Diagostino**　　　　　　　　　　　　　Chapter 13
**Patricia Diagostino,**　　　　　　　　　　　　Case No. 06-10384

　　　　　　　　Debtors.

**MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S OBJECTION
TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN ON THE GROUNDS
THAT UNDER BAPCPA, ABOVE-MEDIAN DEBTORS MAY NOT TAKE A
DECUCTION FOR CHARITABLE CONTRIBUTIONS ON THEIR MEANS TEST**

**STATEMENT OF FACTS**

On March 1, 2006 Frank and Patricia Diagostino (hereinafter the "Debtors") filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of New York. Accordingly, their case is governed by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereinafter "BAPCPA"). In Schedule "I" of their petition, the Debtors listed a deduction in the amount of $18.00 for "GM PAC/Charity." _See Debtors' petition, Schedule I, line 4(d)._ In Form B22C of their petition, also known as the "means test," the Debtors listed a deduction in the amount of $100.00 for "Continued Charitable Contributions." _See Debtors' petition, Form B22C, line 45._ According to the Debtors' Form B22C, they have a combined gross monthly income of $8,904.14 and have a household of three (3) members.[1] Annualized, the Debtors' income is $106,849.68. Pursuant to the Census Bureau Median Family Income guidelines, the applicable median family income for a family of three (3) in the State of New York is

---

[1] The Debtors are married and list their twenty-year-old daughter as a dependent on Schedule "I."

$57,430.00. Because the Debtors' current monthly income exceeds the applicable state median, the Debtors are subject to the means test and their expenses subject to the Internal Revenue Service Guidelines to determine their disposable income for repayment to unsecured creditors. On Form B22C the Debtors list their total monthly expenses as $7,454.07, leaving monthly disposable income of $1,343.89. The Debtors' plan proposed monthly payments in the amount of $1,134.40 over a term of thirty-six (36) months, with a distribution of approximately 40% to unsecured creditors.

On May 4, 2006 the Chapter 13 Trustee (hereinafter "Trustee") filed an Objection to Confirmation of the Debtors' plan. The Trustee indicated in her Objection that because they are above the median, the Debtors were not entitled to continue their $100.00 per month charitable contribution for calculation of disposable income as it was contrary to the IRS guidelines. On May 2, 2006, the Trustee and Debtors' counsel agreed, by way of a signed letter, that in the event that the deduction is not allowed that the disposable income minimum for unsecured creditors would increase by $6,000.00[2]. On May 4, 2006, after conferring with Debtors' counsel and with his consent, the Trustee sent a letter to the Court requesting an initial telephone conference and a schedule for submission of briefs on the issue. On May 31, 2006 a telephone conference was conducted and the Court set a hearing for August 10, 2006 at 2:30 p.m. for Oral Decision. This memorandum is submitted in support of the Trustee's Objection and to assist the Court in rendering a decision on this matter of first impression since BAPCPA went into effect in October 2005.

---

2. Debtors' scheduled charitable contribution of $100.00 per month multiplied by 60 months ($100 x 60 = $6,000.00).

2

## POINT I

### A PLAIN READING OF THE PERTINENT STATUTES REVEALS THAT CHARITABLE CONTRIBUTIONS ARE NOT CONSIDERED A "REASONABLY NECESSARY EXPENSE" FOR ABOVE-MEDIAN DEBTORS

11 U.S.C. §1325(b)(1) states that if the trustee or an unsecured creditor objects to confirmation, the Court may not confirm a plan unless "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." *11 U.S.C. §1325(b)(1)*. "Disposable income" is defined in section 1325(b)(2) as "current monthly income received by the debtor . . . less amounts *reasonably necessary* to be expended . . . [for maintenance or support of the debtor or the debtor's dependent, domestic support obligation, charitable contributions, and for payments and expenditures necessary for the continued operation of a business]." *11 U.S.C. §1325(b)(2)* (emphasis added). However, section 1325(b)(3) provides that if the debtor's current monthly income is above the applicable state median, that the amounts of these expenses (i.e., what is "reasonably necessary") shall be determined "in accordance with subparagraphs (A) and (B) of section 707(b)(2)." *11 U.S.C. §1325(b)(3)*.

Section 707(b)(2) states that "the debtor's monthly expenses shall be . . . the amounts specified under the National Standards and Local Standards . . . [and] "Other Necessary Expenses issued by the Internal Revenue Service . . ." *11 U.S.C. §707(b)(2)(A)(ii)(I)*. Statute further states that "such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses . . . the debtor's reasonably necessary expenses incurred to maintain the safety of the debtor and the family of the debtor from family violence . . . an additional allowance for food and clothing of up to 5 percent of the food and clothing categories . . . for care and support of an elderly, chronically ill, or disabled household member

3

. . . the administrative expenses of administering a chapter 13 plan . . . the actual expenses for each dependent child less than 18 years of age, not to exceed $1,500 per year per child, to attend a private or public elementary or secondary school . . . an allowance for housing and utilities, in excess of the allowance specified in by the Local Standards for housing and utilities by the Internal Revenue Service, based on the actual expenses for home energy costs . . ." *Id.* Here, Congress has clearly set forth an exhaustive list of those expenses considered "reasonably necessary" for above-median debtors, and charitable contributions are not listed. Because of section 1325(b)(3)'s reliance on section 707(b)'s definition of "reasonably necessary expenses" for above-median debtors, and because of the lack of any reference to charitable contributions in 707(b)(2), there exists no statutory provision allowing above-median debtors in Chapter 13 to deduct for charitable contributions on the means test.

The Supreme Court has stated that "it is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another," *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 537, 114 S.Ct.1757 (1994), quoting *Chicago v. Environmental Defense Fund,* 511 U.S. 328, 338, 114 S.Ct. 1588, 1593, 128 L.Ed.2d 302 (1994). The fact that Congress included charitable contributions in section 1325(b)(2)(A) for below-median debtors and then did not specifically include it as an addition (to the IRS standards) its definition of "reasonably necessary expenses" for above-median debtors suggests that this exclusion is not merely an oversight, but the intent of Congress. Thus, a plain reading of sections 1325(b)(3) and 707(b)(2) suggests that charitable contributions are not considered a "reasonably necessary expense" for above-median debtors and should not be deducted from an above-median debtor's disposable income.

### POINT II

### EVEN IF THIS COURT CONSIDERS THE INTERNAL REVENUE SERVICE'S INTERNAL POLICIES AS SET FORTH IN ITS MNAUAL, THE DEBTORS' CHARITABLE CONTRIBUTIONS ARE NOT CONSIDERED A "NECESSARY EXPENSE" AS THEY DO NOT MEET THE INTERNAL REVENUE SERVICE'S INTERNAL CRITERIA

As previously indicated, section 707(b) dictates what expenses are considered "reasonably necessary" for an above-median debtor. Section 707(b) states that "[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as *Other Necessary Expenses* issued by the Internal Revenue Service." *11 U.S.C. §707(b)* (emphasis added). On their website, the IRS manual lists an "Allowable Expense Overview," and indicates that these "allowable expenses" fall into three categories: National Standards, Local Standards, and Other Expenses[3] (*See IRS Manual, §5.15, attached hereto and made a part hereof as Exhibit "A"*). According to the manual, "[a]llowable expenses include those expenses that meet the necessary expense test. *The necessary expense test is defined as expenses that are necessary to provide for a taxpayer's and his or her family's health and welfare and/or production of income.*" (emphasis provided).

"Other Expenses" are defined by the IRS Manual as those that "meet the necessary expense test – they must provide for the *health and welfare* of the taxpayer and/or his or her family or they must be for the production of income." *IRS Manual §5.15.1.10* (emphasis added). The manual goes on to state that if allowed, charitable contributions are considered a necessary expense if "[i]t is a condition of employment or meets the necessary expense tests. Example: A minister is required to tithe according to his employment contract." *Id.*

---

[3] The National and Local Standards will not be discussed here as they are not relevant to the issue of charitable contributions.

5

In this case, Mr. Diagostino works for General Motors and Mrs. Diagostino works in a doctor's office, and there is no evidence in their petition that the Debtors' respective jobs require tithing as a condition thereof. Further, there is no indication in their petition that the Debtors are sending their twenty-year-old daughter to a parochial school so that they might be tithing to an educational institution from which their child would benefit. Therefore, it would appear that the Debtors' charitable contribution does not meet the necessary expense test as defined by the IRS as it is not necessary for the health and welfare of the Debtors or a family member, nor does it appear that it is a condition of employment. Based on the foregoing, the Debtors are not entitled to take a charitable contribution deduction on their means test.

## POINT III

**THE RELIGIOUS LIBERTY AND CHARITABLE DONATIONS PROTECTION ACT OF 1998 WAS IN CONGRESS'S MOST RECENT MEMORY WHEN BAPCPA WAS ENACTED, AND BECAUSE ITS LANGUAGE AND PROVISIONS WERE NOT SPECIFICALLY INCLUDED IN THE EXTENSIVE AMENDMENTS MADE TO 11 U.S.C. §707, THIS OMISSION WAS NOT AN OVERSIGHT BUT THE INTENT OF CONGRESS**

The Religious Liberty and Charitable Donation Protection Act (hereinafter "the Act") was enacted by Congress in 1998 and amended several sections of the Bankruptcy Code as it then existed, most importantly section 1325. Specifically, the Act clarified that charitable contributions not exceeding fifteen (15) percent of a debtor's gross income may be excluded from that debtor's disposable income. *In re Petty*, 338 B.R. 805 (E.D.Ark.2006). The *Petty* Court also stated that one of the purposes of the Act was to "eliminate the bankruptcy court's subjective determination of reasonableness" with regard to charitable contributions and to instead create a *per se* rule that all contributions up to fifteen (15) percent are reasonable, without engaging in a separate analysis of reasonableness. *Id.* at 808. The *Petty* Court further cites

6

*Drummond v. Cavanagh* (*In re Cavanagh*, 250 B.R. 107, 9th Cir. BAP 2000), which states that prior to the Act, some courts took the view that some pre-petition contributions to charitable organizations were considered fraudulent transfers, and the Act amended section 548 accordingly ("A transfer of a charitable contribution to a qualified religious or charitable entity or organization shall not be considered to be a transfer covered under paragraph (1)(B) in any case in which the amount of that contribution does not exceed 15 percent of the gross annual income of the debtor . . ."). *11 U.S.C. §548(a)(2)(A).*

Noticeably absent from this Act is any significant change to section 707(b), which governs allowable expenses on the means test for above-median debtors. The Act does state that "[i]n making a determination *whether to dismiss a case* under this section, the court may not take in to consideration whether a debtor has made, or continues to make, charitable contributions . . . to any qualified religious or charitable entity . . .". *11 U.S.C. 707(b) (as amended by the Act;* emphasis added). Congress, through enactment of this Act, clearly was attempting to protect charitable organizations that benefited from a debtor's donations by not allowing the trustee to recover the donations as a fraudulent transfer, and to avoid having donations reflect negatively on the debtor with respect to dismissal. However, no further language or provisions from that Act were included in the most recent changes to the bankruptcy law. As previously stated above, we must assume that Congress acts intentionally when it includes or fails to include particular language in a statute. Therefore, based on the fact that Congress did not include any language or provisions from the Religious Liberty and Charitable Donations Protection Act, we must read the statute literally and cannot insert an allowance for charitable contributions for above-median debtors.

7

## CONCLUSION

Based on the plain language contained in Sections 1325((b), 707(b) and the IRS guidelines, setting forth what constitutes reasonably necessary expenses for above-median debtors, the Debtors in this case are not entitled to take a deduction for charitable contributions on their means test.

Dated: July 5, 2006                                                          Respectfully submitted,

/S/ Andrea E. Celli
Andrea E. Celli, Esq.
Chapter 13 Standing Trustee
350 Northern Boulevard
Albany, New York 12204
(518) 449-2043

To:

Jerry C. Leek, Esq.                                    Office of the United States Trustee
Attorney for Debtors                                74 Chapel Street, Suite 200
107 South Canton Road                          Albany, New York 12207
Potsdam, New York 13676

  D. Personal care products and services. Includes hair care products, haircuts and beautician services, oral hygiene products and articles, shaving needs, cosmetics, perfume, bath preparations, deodorants, feminine hygiene products, electric personal care appliances, personal care services, and repair of personal care appliances.

  E. Miscellaneous. A discretionary allowance of $100 for one person and $25 for each additional person in a taxpayer's family.

2. Allow taxpayers the total national standard amount for their income level.

  **Example:** *The taxpayer's expenses are: housekeeping supplies - $150, clothing - $150, food - $600, miscellaneous - $400 (Total Expenses - $1,300). The taxpayer is allowed the national standard of $1,100.*

3. A taxpayer that claims more than the total allowed by the national standards must substantiate and justify each separate expense of the total national standard amounts.

  **Example:** *A taxpayer may claim a higher food expense than allowed. Justification would be based on prescribed or required dietary needs.*

### 5.15.1.9 (05-01-2004)
### Local Standards

1. Local standards include the following expenses:

  A. Housing and Utilities. The utilities include gas, electricity, water, fuel, oil, bottled gas, trash and garbage collection, wood and other fuels, septic cleaning, and telephone. Housing expenses include: mortgage or rent, property taxes, interest, parking, necessary maintenance and repair, homeowner's or renter's insurance, homeowner dues and condominium fees. Usually, this is considered necessary only for the place of residence. Any other housing expenses should be allowed only if, based on a taxpayer's individual facts and circumstances, disallowance will cause the taxpayer economic hardship.

  B. Transportation. Vehicle insurance, vehicle payment (lease or purchase), maintenance, fuel, state and local registration, required inspection, parking fees, tolls, driver's license, public transportation. Transportation costs not required to produce income or ensure the health and welfare of the family are not considered necessary. Consider availability of public transportation if car payments (purchase or lease) will prevent the tax liability from being paid in part or full. Public transportation costs could be an option if it does not significantly increase commuting time and inconvenience the taxpayer.

**Note:**

If the taxpayer has no car payment, or no car, question how the taxpayer travels to and from work, grocer, medical care, etc. The taxpayer is only allowed the operating cost or the cost of transportation.

### 5.15.1.10 (05-01-2004)
### Other Expenses

1. Other expenses may be considered if they meet the necessary expense test - they must provide for the health and welfare of the taxpayer and/or his or her family or they must be for the production of income. This is determined based on the facts and circumstances of each case. 

2. If other expenses are determined to be necessary and, therefore allowable, document the reasons for the decision in your history.

3. The amount allowed for necessary or conditional expenses depends on the taxpayer's ability to full pay the liability within five years and on the taxpayer's individual facts and circumstances. If the

# EXHIBIT A

liability can be paid within 5 years, it may be appropriate to allow the taxpayer the excessive necessary and conditional expenses. If the taxpayer cannot pay within 5 years, it may be appropriate to allow the taxpayer the excessive necessary and conditional expenses for up to one year in order to modify or eliminate the expense. *(See IRM 5.14, Installment Agreements)*

| Expense Item | Expense is Necessary if: | Notes/Tips |
|---|---|---|
| Accounting and legal fees. | Representation before the Service is needed or meets the necessary expense tests. Amount must be reasonable. | Disallow any other accounting or legal fees. Disallow costs not related to solving current liability. |
| Charitable contributions *(Donations to tax exempt organizations)* | If it is a condition of employment or meets the necessary expense tests. Example: A minister is required to tithe according to his employment contract. | Disallow any other charitable contributions that are not considered necessary. Example: Review the employment contract. |
| Child Care *(Baby-sitting, day care, nursery and preschool)* | It meets the necessary expense test. Only reasonable amounts are allowed. | Cost of child care can vary greatly. Do not allow unusually large child care expense if more reasonable alternatives are available. Consider the age of the child and if both parents work. |
| Court-Ordered Payments *(Alimony, child support, including orders made by the state, and other court ordered payments)* | If court ordered and being paid, they are allowable. If payments are not being made, do not allow the expense. Child support payments for natural children or legally adopted dependents may be allowed. | Review the court order. |
| Dependent Care *(For the care of the elderly, invalid, or handicapped.)* | If there is no alternative to the taxpayer paying the expense. | |
| Education | It is required for a physically or mentally challenged child and no public education providing similar services is available. Also allowed only for the taxpayer and only if required as condition of employment. | **Example:** An attorney must take so many education credits each year or they will not be accredited and could eventually lose their license to practice before the State Bar. A teacher could lose their position or in some States their pay is commensurate with their education credits. |
| Health Care | Required for the health and welfare of the family. Elective surgery would not be allowed such as plastic surgery or elective dental work. The taxpayer must provide proof of excessive out of pocket medical expenses. | To determine monthly expenses, the total out of pocket expenses would be divided by 12. The Schedule A may also be used to determine the yearly expense. Ensure that the amount used is out of pocket after |